IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

TAUG N. WALKER,
    Plaintiff,

vs.                                                  Case No.: 3:15cv179/LAC/EMT

WARDEN R. COMERFORD et al.,
    Defendants.
_____/

**REPORT AND RECOMMENDATION**

    Plaintiff Taug N. Walker ("Walker"), an inmate of the Florida Department of Corrections ("FDOC"), proceeds pro se and in forma pauperis in this action brought under 42 U.S.C. § 1983. Walker sues Warden R. Comerford, Sergeant Mason, and Officer Larry Williamson of the Santa Rosa Correctional Institution, claiming that they were deliberately indifferent to his safety, in violation of the Eighth Amendment, with regard to searching and handcuffing inmates prior to removing them from their cells (*see* ECF No. 66). Walker sues each Defendant in his individual capacity only (*see id.* at 1).

    Presently before the court is a Third Motion to Dismiss filed by Defendants Comerford and Mason (ECF No. 73). Defendants seek dismissal of Walker's Eighth Amendment claims against them on the ground that Walker failed to exhaust available administrative remedies prior to filing this lawsuit (*id.*). Defendants also seek

dismissal of Walker's state law negligence claims (*id.*). Walker filed a response opposing dismissal of his Eighth Amendment claim against Mason and Comerford, and abandoning his state law negligence claims against all Defendants (ECF No. 77).

I. BACKGROUND AND INTRODUCTION

In the Third Amended Complaint (ECF No. 66), which is the operative pleading, Walker alleges that on November 25, 2014, he was housed in the Q dormitory, which was a mental health unit housing inmates with mental health problems (*id.* at 6). Walker alleges he was removed from his cell to attend a group therapy session (*id.*). Walker alleges that he and all of the inmates who were scheduled to attend the group therapy session were on Close Management ("CM") status, because they all exhibited behavioral problems, and they were all mental health patients (*id.*). Walker alleges Inmate Jeremy Battle, a CM inmate with mental health problems, attended the group therapy session that day (*id.*). Walker alleges that during the group session, Inmate Battle grabbed Walker's shirt and arm and started cutting Walker with a sharp weapon (*id.*). Walker alleges after the attack, he was taken to the medical department, bleeding and in severe pain (*id.* at 6–7). He alleges he was cut approximately ten times on his arms and mid-section (*id.* at 7).

Walker alleges that at the time of the attack, FDOC policy required that each inmate on CM status, or housed in the CSU (Crisis Stabilization Unit) or TCU (Transitional Care Unit), be searched before being removed from his cell (ECF No. 66 at 7). Walker alleges that prior to escorting the inmates to the group therapy session on November 25, 2014, Defendant Officer Williamson searched Inmate Battle in Battle's cell and then walked away from the cell without watching Battle (*id.*). Walker alleges Officer Williamson then returned to Battle's cell and removed him from the cell without re-searching Battle or patting him down (*id.*). Walker alleges this practice provided Battle the opportunity to arm himself with a weapon prior to leaving his cell (*id.*). Walker alleges he observed other officers employ this practice of searching inmates, then walking away from the cells, and then returning to remove the inmates from their cells without re-searching them, which defeated the purpose of the initial search and provided inmates an opportunity to arm themselves prior to leaving their cells (*id.*). Walker additionally alleges that officers routinely handcuffed CM inmates in front of their bodies instead of behind (*see id.* at 6–7). Walker alleges Officer Williamson engaged in these practices on the day of the attack (*id.* at 7–9). Walker alleges after the attack, he heard Officer Williamson state, "I heard Inmate Battle telling someone on the wing that he was going to beat someone up and there is

going to be blood everywhere, but I heard him laughing, so I thought he was playing" (*id.* at 7).

Walker alleges Defendant Sergeant Mason was present in the dormitory on November 25, 2014, and supervised the officers in the dormitory, but Mason failed to intervene when Officer Williamson employed the improper search and handcuffing practices (ECF No. 66 at 6–7, 9). Walker alleges that prior to Inmate Battle's assault on him, Walker witnessed inmates tell Sergeant Mason and Officer Williamson that they would not attend group therapy, because other inmates had threatened to beat them up and stab them (*id.* at 8). Walker alleges he overheard Sergeant Mason and Officer Williamson say that they never perform pat searches on inmates when they come out of their cells, because it is too much work (*id.* at 7).

Walker alleges Defendant Warden Comerford was aware, from inmates' grievances and complaints from inmates' families, that inmates were bringing weapons out of their cells, but Comerford failed to correct his subordinates' practice (ECF No. 66 at 7). Walker alleges after the attack, Warden Comerford changed the handcuffing policy to require that CM inmates be handcuffed behind their bodies instead of in front (*id.*). Walker also alleges that after the attack, he overheard officers state that Warden Comerford was mad at them "because stuff like what happened to

Plaintiff keeps happening" (*id.*). Walker alleges Warden Comerford failed to correct the history of his subordinates' failure to follow policy with respect to searching inmates, and Comerford failed to properly supervise the subordinate officers (*id.* at 9).

Walker claims that Defendants' conduct violated the Eighth Amendment (ECF No. 66 at 9–10). He seeks compensatory and punitive damages (*id.* at 9).

## II.     EXHAUSTION STANDARD

Under the Prison Litigation Reform Act ("PLRA"), a prisoner may not file a § 1983 action "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[W]hen a state provides a grievance procedure for its prisoners, . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." Bryant v. Rich, 530 F.3d 1368, 1372–73 (11th Cir. 2008) (internal quotation marks and citation omitted). Exhaustion of administrative remedies serves two main purposes: first, it protects administrative agency authority, in that it gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures; and, second, it promotes efficiency, in that claims generally can be resolved much more quickly and economically in proceedings before an agency than

in litigation in federal court. *See* Woodford v. Ngo, 548 U.S. 81, 88–89, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006); *see also* Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (the purposes underlying the exhaustion requirement are essentially to put the agency on notice of future allegations so that the agency may investigate and rectify any wrongdoing, as well as to impede plaintiffs from undermining the effectiveness of administrative processes through judicial circumvention and to help prevent the clogging of court dockets).

The PLRA requires "proper exhaustion" that complies with the "critical procedural rules" governing the grievance process. Woodford, 548 U.S. at 95. "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,'—rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007) (quoting Woodford, 548 U.S. at 88). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

An administrative grievance need not name all individuals later sued to satisfy the administrative exhaustion requirement. Jones, 549 U.S. at 219; *see also* Parzyck v. Prison Health Servs., Inc., 627 F.3d 1215, 1218–19 (11th Cir. 2010); Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000) ("[W]hile § 1997e(a) requires that a prisoner provide as much relevant information as he reasonably can in the administrative grievance process, it does not require that he do more than that."). This is so, because § 1997e(a)'s exhaustion requirement is designed "to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued . . . ." Jones, 549 U.S. at 219 (internal quotation marks and citation omitted). The statute merely requires inmates to complete the administrative review process in compliance with the prison's grievance procedures, so that there is "time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford, 548 U.S. at 93 (alteration and quotation marks omitted).

"[A] defense of failure to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement." Turner, 541 F.3d at 1082. "As a result, deciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." *Id.* "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they

conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.*

Second, "[i]f the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082 (citing Bryant, 530 F.3d at 1373–74). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id.* (citing Jones, 549 U.S. 199); Roberts v. Barreras, 484 F.3d 1236, 1240 (10th Cir. 2007)). "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1083.

In Florida, generally, a prisoner must: (1) file an informal grievance with a designated prison staff member on Form DC6-236; (2) file a formal grievance with the institution's warden on Form DC1-303; and then (3) submit an appeal to the Central Office of the Secretary on Form DC1-303. *See* Chandler v. Crosby, 379 F.3d 1278, 1288 (11th Cir. 2004) (citing Fla. Admin. Code rr. 33–103.005–103.007). The FDOC grievance procedure provides that formal grievances must comply with several

requirements, including the following: (1) the grievance must be legible and clearly stated, (2) the included facts must be accurately stated, and (3) the grievance must address only one issue or complaint. *See* Fla. Admin Code r. 33-103.006(2)(d)–(f).

III.  ANALYSIS

There is no dispute that Walker filed formal grievance Log No. 1412-119-031, which was dated November 30, 2014, and received by prison staff the next day (*see* ECF No. 43-8; ECF No. 73 at 6–7; ECF No. 77 at 3). Walker labeled the formal grievance "Safety Emergency Grievance," and alleged the following:

> I went out to group on 11/25/14 & I was assaulted by inmate Jeremy battle [sic] with a weapon. The officer who searched inmate battle [sic] did not search him thoroughly or watch him to make sure he wasn't bringing nothing [sic] out of his cell now im [sic] the one who's suffering from bodily injury, not being able to go to group to make my level, & etc. Classification should have notified security to keep Jeremy battle [sic] away from me since me & my father is a victim in the case he's incarcerated for right now, & he got into a physical altercation with my Brother while they were in Orlando Reception Center because Jeremy battle [sic] say's [sic] we are some "snitches." I would like for this Administrative Remedy to ensure that inmate Jeremy battle [sic] stay's [sic] away from me so that will provide safety for the time being while im [sic] in the States [sic] custody. No inspector general or anyone has come talk to me about pressing charges to the "fullest extent" which I have a right too [sic]. Your assistance in this matter would be deeply appreciated.

(ECF No. 43-8 at 4).

There is also no dispute that Defendant Warden Comerford approved the following response to the formal grievance Log No. 1412-119-031 on December 12, 2014:

> YOUR REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL HAS BEEN RECEIVED, REVIEWED, AND EVALUATED.
>
> Q-DORMITORY SUPERVISOR LIEUTENANT TEMPLES WAS CONTACTED AND ADVISED THAT YOU ARE NO LONGER HOUSED HERE AT SANTA ROSA CI.
>
> HOWEVER, ALL OFFICERS INVOLVED HAVE BEEN COUNSELED WITH [SIC] CONCERNING THE PROPER APPLICATION OF RESTRAINTS, AND THE IMPORTANCE OF PERFORMING A CURSORY PAT SEARCH AS WELL AS THE IN CELL STRIP SEARCH PRIOR TO EXITING THE CELL.
>
> BASED ON THE ABOVE INFORMATION, YOUR GRIEVANCE IS DENIED.
>
> TO RECEIVE FURTHER ADMINISTRATIVE REVIEW OF YOUR COMPLAINT, YOU MUST OBTAIN FORM DC1-303, REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL, COMPLETE THE FORM, PROVIDING ATTACHMENTS AS REQUIRED, AND SUBMIT THE FORM TO THE BUREAU OF INMATE GRIEVANCE APPEALS, 501 SOUTH CALHOUN STREET, TALLAHASSEE, FLORIDA, 32399 WITHIN THE TIME FRAMES SPECIFIED IN CHAPTER 33-103.

(ECF No. 43-8 at 3; ECF No. 73 at 7; ECF No. 77 at 3).

There is no dispute that Walker filed an appeal of formal grievance log #1412-119-031, appeal Log No. 15-6-05519, in which Walker stated the following:

> I received this formal grievance back in the mail today on 2/11/15 & i'm [sic] now appealing it to this office for further review, because the grievance was denied, Log #1412-119-031.

(ECF No. 43-8 at 2; ECF No. 73 at 6; ECF No. 77 at 3).

There is no dispute that the Central Office responded to appeal log #15-6-05519 on February 20, 2015, stating:

> Your administrative appeal has been reviewed and evaluated. The response that you received at the institutional level has been reviewed and is found to appropriately address the concerns that you raised at the institutional level as well as the Central Office level.
>
> Again, you are no longer housed at Santa Rosa.
>
> Your administrative appeal is denied.

(ECF No. 43-8 at 1; ECF No. 73 at 6; ECF No. 77 at 3).

Defendants Sergeant Mason and Warden Comerford contend Walker exhausted only the claim that the officer who searched Inmate Battle (now identified as Defendant Officer Williamson) failed to properly search or monitor Battle to make sure he was not in possession of a weapon when he exited his cell (*see* ECF No. 73 at 15–18). Defendants Mason and Comerford contend that Walker did not allege any facts suggesting that there was a custom or practice of inadequate searches by officers which created a dangerous situation of inmate-on-inmate attacks; nor did he allege that supervisors were aware of such a practice and allowed it to continue (*id.*). Defendants thus contend Walker failed to exhaust his Eighth Amendment claims against Sergeant Mason and Warden Comerford (*id.* at 6–7).

Walker contends the FDOC grievance procedures do not require the inmate to name any particular defendant; instead, all that is required regarding the content of the grievance is the grievance be clearly stated, accurately state the facts, and address only one issue or complaint (ECF No. 77 at 3–4). Walker contends formal grievance Log No. 1412-119-031 addressed the issue he presents in this civil rights action, that is, that prison officials were deliberately indifferent to his safety by failing to properly handcuff and search inmates prior to removing them from their cells, and he was injured as a result (*id.*). Walker further contends that Warden Comerford's response to the formal grievance acknowledged that the common practice of improperly restraining and searching inmates was addressed with additional training (*id.*).

The exhaustion issue in this case comes down to whether Walker's formal grievance Log No. 1412-119-031, the denial of which Walker appealed to the Central Office Log No. 15-6-05519, placed prison officials on notice of his Eighth Amendment claim against Defendants Mason and Comerford. In light of the undisputed facts, the undersigned concludes that formal grievance Log No. 1412-119-031 was sufficient to exhaust Walker's Eighth Amendment claim against Defendants Sergeant Mason and Warden Comerford. In the formal grievance, Walker complained that he was injured as a result of an officer's improper search practice. The warden's

response to the formal grievance indicates that the warden inferred that the problem extended beyond a single officer's conduct (as evidenced by the warden's use of the plural "officers" when stating, "All officers involved have been counseled with [sic] concerning the proper application of restraints, and the importance of performing a cursory pat search as well as the in cell strip search prior to exiting the cell"). Further, the fact that the handcuffing policy changed after Walker filed the formal grievance, requiring officers to handcuff inmates behind their backs instead of in front, indicates that the warden inferred from Walker's formal grievance that the problem involved institutional policy, custom, or practice. Indeed, the Central Office acknowledged, albeit in a response to a different appeal filed by Walker (Log No. 15-6-05609), that the warden's response to Log No. 1412-119-031 addressed an issue broader than a single incident of a single officer's improper search and handcuffing.[1]  Similarly,

---

[1] In the formal grievance underlying appeal Log No. 15-6-05609, Walker complained of the following, in relevant part:

> I was cut up on 11/25/14 in Q dorm by inmate battle [sic]. The unknown officer who searched inmate battle [sic] while he was in his cell did not search him properly. After he searched inmate battle [sic] he walked away from his door while inmate battle [sic] was still in the cell defeating the whole purpose of the search given [sic] battle [sic] time to grab his weapon he cut me with. Now since your officer failed to provide safety im [sic] the one suffering from bodily damages from the cuts & etc. . . . Please review survielence [sic] in Q dorm Quad 2 room 2202 on the day of 11/25/14 & it will show the officer's negligence. I would like something done.

(ECF No. 47, Ex. C; ECF No. 43-9). The responding official from the Central Office returned the appeal without action for the reason that Walker's formal grievance was determined to be in non-

institutional staff acknowledged, in response to an informal grievance received from Walker the same day as formal grievance Log No. 1412-119-031, that the warden's response to Log No. 1412-119-031 addressed an issue broader than a single incident of a single officer's improper search and restraint.[2] There is no doubt that Walker's formal grievance could have provided additional facts regarding the pervasiveness of the improper search and restraint practices, and supervisory officials' knowledge of the practices.[3] However, those facts go more to the question of Sergeant Mason's and

---

compliance with the grievance procedure, and "the response to log #1412-119-031 addressed your issue regarding the application of restraints and searches of inmates" (*id.*).

[2] In the informal grievance, Walker complained of the following:

> Im [sic] writing a informal [sic] grievance because I was assaulted by a inmate [sic] with a weapon. We get stripped searched [sic] before we come out, & whichever officer search inmate battle [sic] could have not been watching him or searched him thoroughly for him to have brought out a weapon & cut me up like that. I don't even believe we are suppose [sic] to be cuffed up in front of us, & now im [sic] the one suffering from not being able to make my level go up [sic] & bodily injury.

(ECF No. 47, Ex. A). The responding official returned the informal grievance to Walker without further processing for the reason that "[t]his issue is being addressed on [sic] formal grievance 1412-119-031." (*id.*).

[3] For example, Walker could have alleged, as he did in the Third Amended Complaint, that he witnessed officers employ the improper search practice in the past, that Defendant Mason was present in the dormitory and did not intervene in the manner in which inmates were being handcuffed, and that prior to the attack, Walker witnessed inmates tell Sergeant Mason and Officer Williamson that they were not coming to group mental health sessions because other inmates had threatened to beat them up and stab them (*see* ECF No. 66 at 6–8). Defendants Mason and Comerford argue that Walker could have included in his formal grievance all of the facts he alleged in his Third Amended Complaint (*see* ECF No. 73 at 15–18); however, Walker states he did not become aware of some of those facts until after he filed formal grievance Log No. 1412-119-031 (*see* ECF No. 77 at 4).

Warden Comerford's liability on the merits of the Eighth Amendment claim, instead of the separate and distinct question of whether Walker exhausted his Eighth Amendment claim. *See, e.g.*, Parzyck, 627 F.3d at 1218–19 ("In holding that Parzyck had not exhausted his first grievance against Dr. Cherry because it referenced acts that occurred before he became Chief Health Officer, the district court confused the question of Dr. Cherry's liability on the merits of the claim with the separate and distinct question of whether Parzyck exhausted his administrative remedies. A prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim. . . . The statute merely requires inmates to complete the administrative review process in compliance with the prison's grievance procedures, so that there is time and opportunity to address complaints internally before allowing the initiation of a federal case.") (internal quotation marks and citations omitted).

Walker's formal grievance Log No. 1412-119-031 and appeal Log No. 15-6-05519 accomplished § 1997e(a)'s purpose of alerting prison officials to the problem underlying Walker's Eighth Amendment claim, and giving officials the opportunity to resolve it before being sued. Therefore, the grievances were sufficient to satisfy the exhaustion requirement with regard to Walker's Eighth Amendment claim against Defendants Sergeant Mason and Warden Comerford.

## IV. CONCLUSION

Defendants Mason and Comerford failed to carry their burden of establishing that Walker failed to exhaust his available administrative remedies with regard to his Eighth Amendment claim.  Therefore, Defendants Mason and Comerford's motion to dismiss Walker's federal claims against them should be denied.  However, in light of Walker's voluntary dismissal of his state law negligence claims against all Defendants (*see* ECF No. 77 at 3), those claims should be dismissed.

Accordingly, it is respectfully **RECOMMENDED**:

That Defendants Mason and Comerford's Third Motion to Dismiss (ECF No. 73) be **GRANTED IN PART AS FOLLOWS:**

1. The motion be **GRANTED** as to Plaintiff's state tort claims against all Defendants; and

2. The motion be **DENIED** in all other respects.

At Pensacola, Florida, this 18th day of May 2016.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.**  *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**